383 S.E.2d 92

**Johnny DEEL**

v.

**Boyd Walter SWEENEY, et al.**

**No. 18686.**

Supreme Court of Appeals of
West Virginia.

July 21, 1989.

William M. Walls, James C. Stuckey, Meyer & Perfater, Charleston, for Johnny Deel.

Anita R. Casey, Meyer, Darragh, Buckler, Bebenek Eck & Hall, Charleston, for Aetna.

WORKMAN, Justice:

This is an action to collect underinsured motorist insurance coverage benefits. Johnny Deel appeals to this Court from an Order of the Kanawha County Circuit Court granting Appellee Aetna Casualty & Surety Company's ("Aetna") Motion to Dismiss and Motion for Declaratory Judgment.

The question before this Court is whether the underinsured motorist coverage purchased by Junior Deel, Johnny Deel's father, provided coverage to the appellant while he was driving his personally owned vehicle insured by another company. The circuit court found the underinsured motorist provisions of the father's policy did not cover the appellant. After a review of the facts and the issues presented, we agree and affirm.

On January 5, 1986, Johnny Deel, while driving his personally owned vehicle, was struck by Boyd Sweeney, who was driving left of the center lane. Johnny Deel sustained serious injuries resulting in medical expenses of more than twenty-eight thousand dollars ($28,000), with medical treatment ongoing. The appellant also alleges permanent physical impairment and lost wages in excess of ten thousand dollars ($10,000). Sweeney, an uninsured motorist, was driving an automobile owned by Joan Ramsey. Ms. Ramsey's policy with Dairyland Insurance Company ("Dairyland") had a twenty thousand dollar ($20,000) bodily injury limit.[1] Dairyland settled with the appellant for this bodily injury limit prior to the filing of this action. Johnny Deel's car was insured by Kemper Insurance Company, but his policy did not include underinsured motorist coverage.[2]

Junior Deel had a valid policy of insurance which included underinsured motorist coverage in the amount of $100,000 per person/$300,000 per occurrence. For the purposes of a motor vehicle policy, an insured is defined by statute as "the named insured, and, while resident of the same household, the spouse of any such named insured, and relatives of either, while in a motor vehicle or otherwise...." *W.Va. Code* § 33–6–31(c) [1988]. Since appellant was a resident in his father's household at the time of the accident, he sought to recover under his father's underinsured motorist policy with Aetna.

The pertinent provisions in the father's policy with Aetna state:

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injuries sustained by a covered person and property damage caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle.

The policy continues on the same page, stating:

EXCLUSIONS

A. We do not provide Underinsured Motorist Coverage for bodily injury and property damage sustained by any person: (1) while occupying, or when struck by, any motor vehicle or trailer of any

---

**1.** *W.Va.Code* § 17D–4–2 [1979] sets the statutorily required minimums as

the amount of twenty thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of forty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of ten thousand dollars because of injury to or destruction of property of others in any one accident.

**2.** The appellant has alleged he does not recall signing any waiver as to this coverage and pursuant to the holding in *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987), the appellant has served his insurer, Kemper Insurance Company, with a copy of this complaint.

type owned by you or any family member which is not insured for this coverage under this policy.

The automobile owned and operated by the appellant was not an insured vehicle under this policy.

By order of January 4, 1988, the circuit court concluded that the Aetna Policy did not cover the claims made by the appellant. This appeal was filed August 2, 1988.

Appellant contends that Aetna's exclusionary clause is more restrictive than the underinsured motorist statutes permit and argues that this Court should reverse the action of the circuit court based on the principles enunciated in *Bell v. State Farm Mut. Auto Ins. Co.*, 157 W.Va. 623, 207 S.E.2d 147 (1974). Appellee argues the exclusion is clear, unambiguous and should be enforced.

■ It is well-settled law in West Virginia that "[w]here provisions of an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation or public policy, the provisions will be applied and not construed." Syl.Pt. 2, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639, 640 (1985); *Prete v. Merchants Property Ins. Co.*, 159 W.Va. 508, 511, 223 S.E.2d 441, 443 (1976); *Atkins v. Stonewall Cas. Co.*, 155 W.Va. 81, 88, 181 S.E.2d 269, 272 (1971).

■ Clearly, the exclusionary clause is plain and unambiguous, so the real question is whether it is contrary to the statute. In *Bell* we held that insurance contracts cannot alter statutory provisions. 157 W.Va. at 627, 207 S.E.2d at 150–51. If a policy's exclusionary clause is more restrictive than the statute, it is void. *Id.*

Since the appellant relies heavily on the *Bell* case, an examination of its facts and rationale is helpful. In *Bell* an uninsured motorist collided with Shirley Bell while she was operating a motorcycle which she owned but had not insured. At the time of the accident Ms. Bell lived with her father. Father and daughter each had uninsured

motorist coverage for their separate vehicles. Both automobile insurance policies were issued by State Farm.

State Farm denied coverage stating that the exclusionary clauses[3] in the policies prevented recovery on either Ms. Bell's or her father's policy. Both of these policies contained the following exclusion, similar to the one in the instant case:

This [uninsured motorist] insurance does not apply:

(a) To bodily injury to an insured while occupying a motor vehicle (other than an insured motor vehicle) owned by the named insured or if a resident of the same household as the named insured, his spouse or relatives of either, or through being struck by such a motor vehicle.

*Id.* 157 W.Va. at 625–26, 207 S.E.2d at 149.

The *Bell* court noted the state had a public interest in regulating portions of the relationship between the insurer and the insured. At the time of the *Bell* decision, the statute required all motor vehicle insurance policies to contain uninsured motorist coverage. *W.Va.Code* § 33–6–31(b) [1972]. The Court identified two rationales for this mandated coverage. The first was "to assure at least minimum relief from the consequences of a loss caused by an uninsured motorist" and the second, to provide a method for distributing the burden of loss among all owners of insured motor vehicles. *Bell*, 157 W.Va. at 627, 207 S.E.2d at 150; *Accord Perkins v. Doe*, 177 W.Va. 84, 350 S.E.2d 711, 714 (1986). In *Bell*, we found the exclusionary clauses were void because the clauses were more restrictive than allowed by statute and contrary to the purpose of the statute "to assure at least minimum relief." *Bell*, 157 W.Va. at 627, 207 S.E.2d at 150.

The *Bell* decision, however, can be distinguished from the instant case in several respects. The current case deals with optional underinsured motorist coverage, not mandatory uninsured motorist coverage.

---

**3.** Both policies also contained an exclusionary clause which provided that uninsured motorist protection would be excess coverage over and

above any other applicable insurance. *Bell*, 157 W.Va. at 626, 207 S.E.2d at 149.

■ Furthermore, in 1979, following the *Bell* decision, the West Virginia Legislature made two changes in *Code,* 33–6–31. It added paragraph (k) which provides as follows:

(k) Nothing contained herein shall prevent any insurer from also offering benefits and limits other than those prescribed herein, nor shall this section be construed as preventing any insurer from incorporating such terms, conditions and *exclusions* as may be consistent with the premium charged.[4] (emphasis added)

The second change required an insurer to provide an option to the insured to increase his uninsured motorist coverage to "all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle ..." up to a specified amount. *Code,* 33–6–31(b). In 1982, *Code,* 33–6–31(b) was further amended to require an insurer to provide optional underinsured motorist coverage for "appropriately adjusted premiums."

■ The above statutory changes indicate that the Legislature does not view uninsured and underinsured coverage in the same light. Uninsured motorist coverage is required,[5] while underinsured motorist coverage is optional. There are significant public policy reasons for the mandatory requirement of uninsured coverage. As *Bell* pointed out, the State has a legitimate interest in assuring every citizen is protected from the risk of loss caused by the uninsured motorist. *Bell,* 157 W.Va. at 627, 207 S.E.2d at 150. The purpose of optional underinsured motorist coverage is to enable the insured to protect himself, if he chooses to do so, against losses occasioned by the negligence of other drivers who are underinsured. A contract for greater benefits generally justifies a greater premium. The Legislature, three years after it approved paragraph (k), of *Code,*

33–6–31 required insurers to offer optional, underinsured motorist coverage, but allowed them to charge "appropriately adjusted premiums" for this coverage. The optional underinsured motorist coverage and paragraph (k) of *Code,* 33–6–31 appear to go hand-in-hand. The insurer must offer underinsured motorist coverage; the insured has the option of taking it; and terms, conditions, and exclusions can be included in the policy as may be consistent with the premiums charged. Clearly, an insurer can limit its liability so long as such limitations are *not* in conflict with the spirit and intent of the statute and the premium charged is consistent therewith.

However, we hasten to add that insurers should not seize upon this holding as some faint encouragement that the public policy, as indicated in the statutes and as enunciated in the *Bell* case, may be subject to erosion. This Court will continue to be vigilant in holding the insurers' feet to the fire in instances where exclusions or denials of coverage strike at the heart of the purposes of the uninsured and underinsured motorist statutes provisions.

For all the reasons set forth herein, the ruling of the circuit court is affirmed.

We affirm.

---

4. No changes have been made in *Code,* 33–6–31(k) since its enactment.

5. In 1982, the Legislature did amend *Code,* 33–6–31(b) to provide that the previously mandated uninsured motorist coverage could be specifically and affirmatively waived. However, the Legislature in 1988 once again made uninsured motorist coverage mandatory. *See W.Va.Code* § 33–6–31(b) [1988].