483 S.E.2d 533

**Robert IMGRUND, Plaintiff Below, Appellee**

v.

**Philip T. YARBOROUGH, Defendant Below,**

and

**Nationwide Mutual Insurance Company, a Corporation, Defendant Below, Appellant.**

No. 23347.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 4, 1997.

Decided Feb. 20, 1997.

William R. DeHaven, Martinsburg, for Appellee.

Douglas S. Rockwell, Steptoe & Johnson, Charles Town, Joanna I. Tabit, Steptoe & Johnson, Charleston, for Nationwide Mutual Insurance Company.

DAVIS, Justice:

The defendant below and appellant herein, Nationwide Mutual Insurance Company, appeals a declaratory judgment from the Circuit Court of Berkeley County. The circuit court determined that an "owned but not insured" exclusion to *uninsured* motorist coverage was void and that the plaintiff below and appellee herein, Robert Imgrund, was eligible to receive *uninsured* motorist benefits under his parents' Nationwide automobile insurance policy. Upon a review of the record, we reverse the order of the circuit court. We hold that an "owned but not insured" exclusion to *uninsured* motorist coverage is valid and enforceable above the mandatory limits of *uninsured* motorist coverage required by W. Va.Code §§ 17D–4–2 (1979) (Repl.Vol.1996) and 33–6–31(b) (1988) (Supp.1991). To the extent that an "owned but not insured" exclusion attempts to preclude recovery of statutorily mandated minimum limits of *uninsured* motorist coverage, such exclusion is void and ineffective.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts underlying this appeal are not disputed by the parties. On August 8, 1993, the plaintiff below, Robert Imgrund [hereinafter Imgrund], who was driving a motorcycle, and the defendant below, Philip T. Yarborough [hereinafter Yarborough],[1] who was driving a pick-up truck, were involved in a motor vehicle accident in Berkeley County, West Virginia. West Virginia State Police reported to the accident scene and cited Yarborough for failing to yield the right of way and for having no insurance.[2] Imgrund, who carried *uninsured* motorist coverage on his motorcycle in the minimum statutory amount

---

1. Yarborough is not a party to the instant appeal.

2. The record indicates that Imgrund was not cited for improper driving.

of $20,000,[3] filed a claim with his insurer, Colonial Insurance Company of California [hereinafter Colonial]; Colonial subsequently paid Imgrund the policy limits of $20,000 on his *uninsured* motorist claim.

Imgrund, who was over the age of eighteen but was still residing in his parents' household at the time of the accident, also sought payment under the *uninsured* motorist provision of his parents' automobile insurance policy. At the time of the accident, Imgrund's parents owned two automobiles for which they had purchased automobile insurance from the defendant below, Nationwide Mutual Insurance Company [hereinafter Nationwide]. The coverage for each of these vehicles included *uninsured* motorist coverage of up to $100,000 per vehicle. Imgrund filed a claim with Nationwide seeking payment under the *uninsured* motorist provision of his parents' insurance. Nationwide refused to pay Imgrund's claim citing an "owned but not insured" provision contained in his parents' policy. In sum, the exclusionary language stated:

> This *Uninsured* Motorists insurance does not apply:
>
> . . . .
>
> 5. To **bodily injury** suffered while **occupying** a **motor vehicle** owned by **you** or a **relative** but not insured for Auto Liability coverage under this policy. It also does not apply to **bodily injury** from being hit by any such **motor vehicle**.

(Italicized emphasis added; bolded emphasis in original).[4]

Following Nationwide's refusal to pay his claim, Imgrund filed a civil action in the Circuit Court of Berkeley County, on August 24, 1994, against Yarborough and Nation-

wide. Among his causes of action, Imgrund sought a declaratory judgment against Nationwide with a judicial determination of Nationwide's obligation to pay his rejected claim.[5] By declaratory judgment order entered July 14, 1995, the circuit court determined the exclusionary clause contained in Imgrund's parents' Nationwide policy to be "void and ineffective." The court further found that Imgrund was "a person eligible for coverage under the *uninsured* motorist coverage provisions" of his parents' Nationwide policy. (Emphasis added). From this declaratory judgment, Nationwide appeals to this Court.[6]

## II.

## DISCUSSION

The primary issue presented by this appeal is whether an "owned but not insured" exclusion is valid with respect to *uninsured* motorist insurance coverage. We have previously decided this question both with respect to *uninsured* motorist insurance and *underinsured* motorist insurance. Following a brief discussion of the applicable standard of review, we will revisit our prior decisions as they pertain to the instant appeal.

### A.

### *Standard of Review*

This appeal is before the Court upon the declaratory judgment order of the circuit court. We have previously stated that the purpose of a declaratory judgment

> " 'is to avoid the expense and delay which might otherwise result, and in securing in advance *a determination of legal questions*

---

3. *See infra* Section II.B. for the relevant portions of W. Va.Code § 17D–4–2 (1979) (Repl.Vol.1996) and § 33–6–31 (1988) (Supp.1991).

4. The exclusionary language quoted is derived from a subsequent endorsement to the policy purchased by Imgrund's parents. The exclusionary language contained in the original automobile insurance policy issued to Imgrund's parents is substantially similar to the later endorsement, quoted above, and provides:

> This *Uninsured* Motorists insurance does not apply:
>
> . . . .

5. To **you** or a **relative** while **occupying** a **motor vehicle** (other than a **motor vehicle** insured for *Uninsured* Motorists coverage under this policy) owned by **you** or such **relative**. (Italicized emphasis added; bolded emphasis in original).

5. Imgrund also sued Yarborough for negligence.

6. Nationwide has requested, and we have granted, by order entered April 3, 1996, a stay in the underlying proceedings against defendant Yarborough while this appeal is pending before this Court.

which, if pursued, can be given the force and effect of a judgment or decree without the long and tedious delay which might accompany other types of litigation.'"

*Cox v. Amick,* 195 W.Va. 608, 612, 466 S.E.2d 459, 463 (1995) (quoting *Harrison v. Town of Eleanor,* 191 W.Va. 611, 615, 447 S.E.2d 546, 550 (1994) (quoting *Crank v. McLaughlin,* 125 W.Va. 126, 133, 23 S.E.2d 56, 60 (1942))) (emphasis in original). Given that the question presented by a declaratory judgment is one of law, "[a] circuit court's entry of a declaratory judgment is reviewed *de novo.*" Syl. pt. 3, *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (emphasis in original).

#### B.

### Validity of "Owned but not Insured" Exclusions to Uninsured Motorist Coverage

Before reaching the merits of the parties' contentions in the present case, our review necessarily must begin with an examination of our prior decisions in this area. In *Bell v. State Farm Mutual Automobile Insurance Company,* 157 W.Va. 623, 207 S.E.2d 147 (1974), we were asked to decide the precise issue posed by the parties to this appeal: whether an "owned but not insured" exclusion is valid with respect to *uninsured* motorist coverage. The facts of *Bell* are somewhat similar to those presently before us. Shirley Bell was driving a motorcycle and was involved in a motor vehicle accident with an *uninsured* motorist on June 8, 1970. At the time of the accident, Ms. Bell owned the motorcycle but did not have a policy of insurance in effect with regard to that vehicle. She also owned a Fiat automobile for which she had purchased an automobile liability insurance policy containing *uninsured* motorist coverage up to $10,000.[7] In addition, Ms. Bell's father, in whose household she was residing, owned an automobile for which he had obtained liability insurance, including *uninsured* motorist coverage in a maximum amount of $10,000. Ms. Bell sought to recov-

er under the *uninsured* motorist provisions of both her policy and her father's policy. 157 W.Va. at 624–25, 207 S.E.2d at 148–49. However, both policies contained an exclusionary clause with regard to the *uninsured* coverage indicating that:

"This [*uninsured* motorist] insurance does not apply:

"(a) To bodily injury to an insured while occupying a motor vehicle (other than an insured motor vehicle) owned by the named insured or if a resident of the same household as the named insured, his spouse or relatives of either, or through being struck by such a motor vehicle."

157 W.Va. at 625–26, 207 S.E.2d at 149 (emphasis added; brackets and parentheses in original).

■ The *uninsured* motorist statute applicable to the facts of *Bell* provided, in pertinent part:

(b) Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an *uninsured* motor vehicle, within limits which shall be no less than the requirements of section two, article four, chapter seventeen-d of the code of West Virginia, as amended from time to time[.]

(c) As used in this section, ... the term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured, and relatives of either, while in a motor vehicle or otherwise[.]

W. Va.Code § 33–6–31 (1967) (1967 Acts of the Legislature, Regular Session, ch. 97) (emphasis added). Based upon this statutory language, the Court determined that:

An *uninsured* motorist clause in an insurance policy, if such policy conforms to the statute, insures all family members of a named insured's household without exception whenever bodily injury results from

---

**7.** At the time of the facts leading to the *Bell* decision, the *uninsured* motorist coverage required by statute was $10,000. *See* W. Va.Code §§ 17D–4–2 (1959) (Main Vol.1966) (establishing minimum limits of financial responsibility); 33–

6–31(b) (1967) (1967 Acts of the Legislature, Regular Session, ch. 97) (requiring motorists to have *uninsured* motorist coverage in minimum amounts established by W. Va.Code § 17D–4–2).

an accident with an *uninsured* motorist in which the *uninsured* motorist would be legally liable. Within this required *uninsured* motorist coverage there are no distinctions with regard to an owned but not insured motor vehicle, as the coverage applies to the use or occupancy of *"a motor vehicle or otherwise."*

157 W.Va. at 626–27, 207 S.E.2d at 149–50 (emphasis to *"uninsured"* added). Accordingly, the *Bell* Court held, in Syllabus Point 2:

> An exclusionary clause within a motor vehicle insurance policy issued by a West Virginia licensed insurer which excludes *uninsured* motorist coverage for bodily injury caused while the insured is occupying an owned-but-not-insured motor vehicle is void and ineffective under Chapter 33, Article 6, Section 31, *Code of West Virginia, 1931*, as amended.

157 W.Va. 623, 207 S.E.2d 147 (emphasis to *"uninsured"* added).[8] Voiding the exclusionary clauses, the Court further determined that Ms. Bell would be "entitled to recover . . . the statutory [*uninsured* motorist] coverage which now stands in lieu of the void exclusionary clause." *Bell*, 157 W.Va. at 627, 207 S.E.2d at 150 (emphasis added).

The *Bell* Court explained the reasoning behind its holding by noting that the Legislature, in enacting the *uninsured* motorist statute, sought to "assure at least minimum relief from the consequences of a loss caused by an *uninsured* motorist." *Id.* (emphasis added). Because the statute very specifically delineated what was required of *uninsured* motorist coverage, the Court held an insurer could not avoid these statutory regulations through the language of an automobile insurance policy.

Despite the apparent resolution of the instant appeal by the *Bell* decision, our inquiry

need not end here. Subsequent to *Bell*, the West Virginia Legislature amended W. Va. Code § 33–6–31 by adding additional language to subsection (b) and adding a new subsection (k). Our later decision in *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989), turned upon these statutory amendments. *Deel* considered the issue of whether "owned but not insured" exclusions are valid with respect to *underinsured* motorist coverage. On January 5, 1986, Johnny Deel was driving a car and was involved in a motor vehicle accident with an *uninsured* motorist; the car driven by the *uninsured* motorist was insured and the bodily injury limits of this policy, $20,000, were paid to Deel.[9] Although Deel owned and insured the car he was driving in the accident, he did not have *underinsured* motorist coverage. Deel's father, who also owned a car, had automobile insurance that included *underinsured* motorist coverage. Because Deel was residing in his father's household at the time of the accident, he filed a claim for *underinsured* motorist benefits as provided by his father's policy. 181 W.Va. at 461, 383 S.E.2d at 93. As in *Bell*, though, Deel's father's policy contained an "owned but not insured" exclusion:

> "EXCLUSIONS
>
> "A. We do not provide *Underinsured* Motorist Coverage for bodily injury and property damage sustained by any person: (1) while occupying, or when struck by, any motor vehicle or trailer of any type owned by you or any family member which is not insured for this coverage under this policy."

181 W.Va. at 461–62, 383 S.E.2d at 93–94 (emphasis added).

As a result of various amendments, the *uninsured/underinsured* motorist statute ap-

---

8. The *Bell* Court also held, in Syllabus Point 4:
 > An insured covered simultaneously by two *uninsured* motorist policies may recover on both policies up to the limits of liability on each policy or the amount of the judgment obtained from the *uninsured* motorist, whichever is less, as a result of one accident and injury.

 157 W.Va. 623, 207 S.E.2d 147 (emphasis added). Because our decision of this appeal turns upon our resolution of the validity of "owned but

not insured" exclusions, we need not address the plaintiff's contention that he was eligible for coverage under his parents' policy or the extent of such coverage if, in fact, it existed. *See infra* note 14.

9. This case concerns an exclusion to *underinsured* coverage because the insurance coverage of the *uninsured* motorist's vehicle did not satisfy Deel's claims.

plicable at the time of *Deel* stated, in relevant part:

(b) ... Provided further, that such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an *uninsured* or *underinsured* motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured. "*Underinsured motor vehicle*" means a motor vehicle with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either (i) less than limits the insured carried for *underinsured* motorists' coverage, or (ii) has [*sic*] reduced by payments to others injured in the accident to limits less than limits the insured carried for *underinsured* motorist's coverage.

. . . .

(k) Nothing contained herein shall prevent any insurer from also offering benefits and limits other than those prescribed herein, nor shall this section be construed as preventing any insurer from incorporating in such terms, conditions and exclusions as may be consistent with the premium charged.

W. Va.Code § 33–6–31 (1982) (Supp.1983) (emphasis added).[10]

▮ The *Deel* Court first distinguished the earlier *Bell* decision based upon the differences between *uninsured* motorist coverage, which is required by law, and *underinsured* motorist coverage, which is optional and not required by law. 181 W. Va. at 463, 383 S.E.2d at 95. The Court further declined to extend *Bell* as a result of the amendments to W. Va.Code § 33–6–31, which expanded subsection (b) to permit an insurer to offer optional *underinsured* motorist coverage for "appropriately adjusted premiums" and added subsection (k) to allow an insurer to include within an insurance policy exclusions

"as may be consistent with the premium charged." With respect to the statutory amendments, the Court recognized that the ability of an insurer to offer optional *underinsured* motorist coverage for "appropriately adjusted premiums," W. Va.Code § 33–6–31(b), corresponds directly with the insurer's ability to "incorporat[e] such ... exclusions as may be consistent with the premium charged," W. Va.Code § 33–6–31(k). Ruling that the "owned but not insured" exclusion was valid with respect to the *underinsured* motorist coverage at issue in *Deel*, the Court held, in Syllabus Point 3, that:

Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the *uninsured* and *underinsured* motorists statutes.

181 W.Va. 460, 383 S.E.2d 92 (emphasis added).

Thus, we are faced in the instant appeal with a rather complex situation. On the one hand, our prior decision in *Bell* relies upon an antiquated statute and mandates invalidation of "owned but not insured" exclusions to *uninsured* motorist coverage. On the other hand, *Deel* interprets an amended statute and counsels that such exclusions are valid with respect to *underinsured* motorist coverage. In view of the extensive amendments to applicable portions of the West Virginia *Uninsured* Motorist Law, W. Va.Code § 33–6–31, we conclude that the statute, rather than our prior decision in *Bell*, controls the outcome of this appeal. In this manner, we must determine whether the "owned but not insured" exclusion to *uninsured* motorist coverage contained in Imgrund's parents' Nationwide policy violates the "spirit and intent of the *uninsured* ... motorists statutes." Syl. pt. 3, in part, *Deel*, 181 W.Va. 460, 383 S.E.2d 92 (emphasis added).

We note, at the outset, that *uninsured* motorist coverage is required by state law, whereas *underinsured* motorist coverage is

**10.** Subsection (c) of W. Va.Code § 33–6–31, defining "insured," remained unchanged by the subsequent amendments to this statute.

optional and not legally required. *See* W.Va.Code §§ 17D–4–2 (1979) (Repl.Vol. 1996) (establishing minimum limits of financial responsibility); 33–6–31(b) (1988) (Supp. 1991) (requiring motorists to have *uninsured* motorist coverage in minimum amounts established by W. Va.Code § 17D–4–2). *See also* Syl. pt. 1, in part, *Miller v. Lambert*, 195 W.Va. 63, 464 S.E.2d 582 (1995) (*"Uninsured* motorist insurance coverage is mandatory.") (emphasis added). While this is indeed an important distinction, the facts of the instant case do not turn upon this difference. W.Va.Code § 17D–4–2 (1979) (Repl.Vol.1996) requires an owner or operator of a motor vehicle to possess insurance in a minimum amount of

> twenty thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of forty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of ten thousand dollars because of injury to or destruction of property of others in any one accident.

Our *uninsured* motorist statute echoes these requirements as the minimum amount of *uninsured* motorist coverage each motor vehicle owner or operator must carry. W.Va. Code § 33–6–31(b) (1988) (Supp.1991).[11] However, in the next sentence of subsection (b), an insured may opt to purchase additional *uninsured* motorist coverage of up to

one hundred thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of fifty thousand dollars because of injury to or destruction of property of others in any one accident[.]

*Id.*

The facts of the present case indicate that Imgrund received the statutory minimum amount of *uninsured* motorist coverage from his policy with Colonial. His attempts to recover under his parents' Nationwide policy coincide with an insured's ability to purchase optional additional *uninsured* motorist coverage. Thus, irrespective of the effect of the "owned but not insured" exclusion of his parent's policy, Imgrund's statutory right to receive a minimum amount of *uninsured* motorist coverage has not been violated in this case.

 Turning now to the exclusionary language at issue, we recognize that "[s]tatutory provisions mandated by the *Uninsured* Motorist Law, *W. Va.Code* § 33–6–31 [1988] may not be altered by insurance policy exclusions." Syl. pt. 1, *Deel*, 181 W.Va. 460, 383 S.E.2d 92 (emphasis to *"uninsured"* added). Upon the facts before us, we hold that an "owned but not insured" exclusion to *uninsured* motorist coverage is valid and enforce-

---

**11.** The pertinent portions of W. Va.Code § 33–6–31(k) (1988) (Supp.1991), have not changed from the 1982 version of this statute. The relevant portion of W. Va.Code, § 33–6–31(b) (1988) (Supp.1991), is substantially similar to the earlier version of this statute. Subsection (b) provides, in pertinent part:

> (b) Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an *uninsured* motor vehicle, within limits which shall be no less than the requirements of section two, article four, chapter seventeen-d of the code of West Virginia, as amended from time to time: Provided, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an *uninsured*

motor vehicle up to an amount of one hundred thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of fifty thousand dollars because of injury to or destruction of property of others in any one accident.... Provided further, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an *uninsured* or *underinsured* motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy[.]

(Emphasis added).

able above the mandatory limits of *uninsured* motorist coverage required by W. Va. Code §§ 17D–4–2 (1979) (Repl.Vol.1996) and 33–6–31(b) (1988) (Supp.1991). To the extent that an "owned but not insured" exclusion attempts to preclude recovery of statutorily mandated minimum limits of *uninsured* motorist coverage, such exclusion is void and ineffective consistent with this Court's prior holding in Syllabus Point 2 of *Bell v. State Farm Mutual Automobile Insurance Company*, 157 W.Va. 623, 207 S.E.2d 147 (1974).[12] This decision is in accord with our prior decisions holding comparable automobile insurance policy exclusions of limited validity. *See* Syl. pt. 4, *Dotts v. Taressa J.A.*, 182 W.Va. 586, 390 S.E.2d 568 (1990) ("An intentional tort exclusion in a motor vehicle liability insurance policy is precluded under our Motor Vehicle Safety Responsibility Law, W. Va.Code, 17D–2A–1, *et seq.*, up to the amount of the minimum insurance coverage required therein. The policy exclusion will operate as to any amount above the statutory minimum."); Syl., *Jones v. Motorists Mut. Ins.*

*Co.*, 177 W.Va. 763, 356 S.E.2d 634 (1987) ("A 'named driver exclusion' endorsement in a motor vehicle liability insurance policy in this State is of no force or effect up to the limits of financial responsibility required by *W. Va. Code*, 17D–4–2 [1979]; however, above those mandatory limits, or with regard to the property of the named insured himself, a 'named driver exclusion' endorsement is valid under *W. Va.Code*, 33–6–31(a) [1982].").

█ It should be noted that Imgrund, himself, could have opted to obtain *uninsured* motorist coverage above the minimum statutory requirements upon the payment of "appropriately adjusted premiums." *See* W. Va.Code § 33–6–31(b). However, in the absence of these additional premiums, "an insurer can limit its liability so long as such limitations are *not* in conflict with the spirit and intent of the statute and the premium charged is consistent therewith." *Deel*, 181 W.Va. at 463, 383 S.E.2d at 95 (emphasis in original). *See also* W. Va.Code § 33–6–31(k).[13] Choosing not to obtain such addi-

---

**12.** We note that our decision of this case, upholding "owned but not insured" exclusions with respect to *uninsured* motorist coverage, corresponds with the view of numerous other jurisdictions that have addressed this issue. *See, e.g., Williams v. State Farm Mut. Auto. Ins. Co.*, 992 F.2d 781 (8th Cir.1993) (concluding exclusion to *uninsured* motorist coverage does not violate Iowa statutory law because exclusion applies only to those amounts in excess of minimum statutorily mandated *uninsured* coverage); *Crawford v. Emcasco Ins. Co.*, 294 Ark. 569, 745 S.W.2d 132 (1988) (finding that legislature did not intend to permit insured to purchase *uninsured* motorist coverage for one vehicle and extend such coverage to all vehicles owned by insured); *Lumbermens Mut. Casualty Co. v. Stern*, 433 So.2d 48 (Fla.Dist.Ct.App.1983) (per curiam) (upholding validity of exclusion to *uninsured* motorist coverage pursuant to statute); *Powell v. State Farm Mut. Auto. Ins. Co.*, 86 Md.App. 98, 585 A.2d 286 (1991) (validating exclusion to *uninsured* motorist coverage and determining that exclusion is not contrary to public policy of mandatory *uninsured* motorist coverage); *Johnson v. Hanover Ins. Co.*, 400 Mass. 259, 508 N.E.2d 845 (1987) (holding exclusion to *uninsured* motorist coverage valid only with regard to benefits sought in excess of minimum statutory limits of *uninsured* motorist coverage). For a thorough review of the split of authority among various state courts regarding the validity of "owned but not insured" exclusions to *uninsured* motorist coverage see Shannon M. McDonough, Note, *Exclusions for Owned but not Insured in*

*Uninsured Motorist Provisions—What are States Really Driving at in their Decisions?*, 43 Drake L.Rev. 917 (1995).

**13.** In rendering this decision, we recognize the apparent inconsistencies of our holding validating exclusions to *uninsured* motorist coverage and our prior decisions addressing anti-stacking language in *uninsured* and *underinsured* motorist coverage provisions. *See, e.g.*, Syl. pt. 4, *Miller v. Lemon*, 194 W.Va. 129, 459 S.E.2d 406 (1995) ("Anti-stacking language in an automobile insurance policy is valid and enforceable as to *uninsured* and *underinsured* motorist coverage where the insured purchases a single insurance policy to cover two or more vehicles and receives a multi-car discount on the total policy premium. If no multi-car discount for *uninsured* or *underinsured* motorist coverage is apparent on the declarations page of the policy, the parties must either agree or the court must find that such a discount was given. In such event, the insured is not entitled to stack the coverages of the multiple vehicles and may only recover up to the policy limits set forth in the single policy endorsement.") (emphasis added); Syl. pt. 3, *Russell v. State Auto. Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992) (" 'So-called "antistacking" language in automobile insurance polices is void under *W. Va.Code*, 33–6–31(b), as amended, to the extent that such language is purportedly applicable to *uninsured* or *underinsured* motorist coverage, and an insured covered simultaneously by two or more *uninsured* or *underinsured* motor-

tional coverage, Imgrund cannot now claim that he is entitled to benefit from the prudence of his parents. Rather, we reiterate our prior statement from *Alexander v. State Automobile Mutual Insurance Company,* in which the plaintiff had chosen not to procure optional *underinsured* motorist coverage:

> It seems patently unfair that a person, who by her own free will, chooses not to buy optional *underinsured* motorist coverage, should still seek to benefit from someone else's choice to protect themselves, at a cost, from the potential negligence of other motorists who are *underinsured.* No allegations were raised that the insurance company failed to advise the plaintiff of her option to buy *underinsured* motorist coverage. It is unfortunate perhaps, but common sense tells us that a party cannot get something for nothing. In this case, [the plaintiff] purposely chose not to purchase *underinsured* motorist coverage, and thus, she cannot benefit from another's prudence.

187 W.Va. 72, 79, 415 S.E.2d 618, 625 (1992) (emphasis added).

In sum, we note the effect of this decision is to require motorists to have in force and effect *uninsured* motorist coverage for each motor vehicle he or she owns thereby avoiding the potential result prophesied by Justice Sprouse in *Bell:*

> The interpretation placed on this [statute, W. Va.Code § 33–6–31(b) (1967)] by the majority allows an insured to pay premiums for the *uninsured* motorist protection

of one vehicle, yet receive free coverage for any other vehicle which he owns. This bonus is bestowed despite a specific contract between the parties to the contrary.

157 W.Va. at 630, 207 S.E.2d at 151 (Sprouse, J., dissenting) (emphasis added) (citation omitted). While we recognize an insurer's ability to incorporate an "owned but not insured" exclusion to *uninsured* motorist coverage in a policy of automobile insurance, we cannot overemphasize an individual's entitlement to receive the statutory minimum limits of *uninsured* motorist coverage, notwithstanding such an exclusion. In reiterating the limited nature of today's holding, we repeat our admonishment:

> [W]e hasten to add that insurers should not seize upon this holding as some faint encouragement that the public policy, as indicated in the statutes and as enunciated in the *Bell* case, may be subject to erosion. This Court will continue to be vigilant in holding the insurers' feet to the fire in instances where exclusions or denials of coverage strike at the heart of the purposes of the *uninsured* and *underinsured* motorist statute provisions.

*Deel,* 181 W.Va. at 463, 383 S.E.2d at 95 (emphasis to *"uninsured"* and *"underinsured"* added).[14]

## III.

## CONCLUSION

For the foregoing reasons, we conclude that the "owned but not insured" exclusion to

---

ist policy endorsements may recover under all of such endorsements up to the aggregated or stacked limits of the same, or up to the amount of the judgment obtained against the *uninsured* or *underinsured* motorist, whichever is less, as a result of one accident and injury.' Syl. Pt. 3, *State Auto. Mut. Ins. Co. v. Youler,* 183 W.Va. 556, 396 S.E.2d 737 (1990)." (emphasis to *"uninsured"* and *"underinsured"* added). Our present decision may be distinguished from these cases, though, based upon the fact that this appeal involves an exclusionary clause ("[t]he net effect of [an "owned but not insured"] exclusion is to withdraw coverage from an insured occupying or struck by any automobile owned by any insured if the automobile is not designated as an insured automobile in the named insured's policy" (3 Irvin E. Schermer, Automobile Liability Insurance 3D § 47.02, p. 47–11 (1995))) as opposed to an anti-stacking provision ("[i]nsurer[']s

... attempt[] to prevent recovery under multiple coverages by adopti[on of] provisions that limit an insured's recovery, regardless of his actual damage, to an amount that represents the single highest limit of liability available under any one coverage" (3 *id.* at § 46.02[1], p. 46–15)).

14. Upon its appeal to this Court, defendant Nationwide also protests the second portion of the circuit court's declaratory judgment order in which the court determined that Imgrund was eligible for coverage under his parents' Nationwide policy. Because we have determined that the "owned but not insured" exclusion is valid and applicable to the facts of this case, we decline to determine whether, in fact, Imgrund would have been eligible for coverage under his parents' policy if such an exclusion had not precluded his claim.

*uninsured* motorist coverage is valid and enforceable as applied to the facts of this case. Accordingly, we reverse the decision of the Circuit Court of Berkeley County.

Reversed.