No. 22-0155, *Greg Allen Ball v. United Financial Casualty Company, Milton Hardware, LLC, Builders Discount, LLC, and Rodney Perry*

**FILED**

**November 17, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Armstead, Justice, dissenting:

In this case, Rodney Perry allegedly backed a truck into, and injured, Greg Ball. The United States Circuit Court of Appeals for the Fourth Circuit has asked us to state whether the vehicle's insurer, United Financial Casualty Company, must provide Mr. Perry either (a) the full amount of coverage available under its automobile liability insurance policy (the "Policy") or (b) the minimum amount of coverage required by the Motor Vehicle Safety Responsibility Law, W. Va. Code §§ 17D-1-1 to 17D-6-7 (the "MVSRL"). In practical terms, the question is whether United Financial is obligated for $1 million of liability coverage or $25,000 of liability coverage.[1]

Ordinarily, the Policy's terms and conditions would control, but in this case, the Policy includes language that purports to exclude coverage because Mr. Perry was driving a truck belonging to *Milton Hardware, LLC*, and because Mr. Ball was *Milton Hardware's* employee. *See United Fin. Cas. Co. v. Ball*, 941 F.3d 710, 714-15 (4th Cir. 2019) (describing the Policy's "Employee Indemnification and Employer's Liability exclusion" (the "Exclusion")). According to the Fourth Circuit, this Exclusion or "limitation of coverage for a permissive user of an insured vehicle contravenes West

---

[1] *See* W. Va. Code § 17D-4-2(b) (eff. 2015) (defining "proof of financial responsibility" as "proof of ability to respond in damages for liability . . . arising out of the . . . use of a motor vehicle . . . in the amount of $25,000 because of bodily injury to or death of one person in any one accident . . .").

Virginia Code § 33-6-31(a) [(eff. 2015)] and . . . renders the exclusion unenforceable." *United Financial*, 941 F.3d at 717. Nevertheless, this conclusion "must be understood in context." *United Fin. Cas. Co. v. Milton Hardware, LLC*, No. CV 3:17-2002, 2020 WL 1545766, at *2 (S.D. W. Va. Mar. 31, 2020) (memorandum opinion and order). "When the language of an insurance policy is contrary to statute and therefore void," that is not the end of the matter. *Adkins v. Meador*, 201 W. Va. 148, 153, 494 S.E.2d 915, 920 (1997). On the contrary, we must construe "the policy . . . to contain the coverage required by West Virginia law." *Id.* Thus, the question before us is what level of coverage *West Virginia law requires* when the exclusion, an aspect of the bargain between United Financial and Milton Hardware, cannot be enforced because it contravenes West Virginia Code § 33-6-31(a).

We have answered a similar question in a previous opinion issued by this Court. In the Syllabus of *Jones v. Motorists Mut. Ins. Co.*, we held that "[a] 'named driver exclusion' endorsement in a motor vehicle liability insurance policy in this State is of no force or effect *up to the limits of financial responsibility* required by *W.Va.Code,* 17D–4–2 [1979]"; nevertheless, "*above those mandatory limits* . . . a 'named driver exclusion' endorsement is valid under *W.Va.Code,* 33–6–31(a) [1982]." 177 W. Va. 763, 356 S.E.2d 634 (1987), *overturned due to legislative action* (emphasis added).[2] We applied the same rule in Syllabus Point 4 of *Dotts v. Taressa J.A.*, 182 W. Va. 586, 390 S.E.2d 568 (1990)

---

[2] *See* W. Va. Code § 33-6-31h(c) (eff. 2015) (stating that insurers need not "provide any coverage" for "any person . . . specifically excluded from coverage under the provisions of a motor vehicle liability policy").

(holding that "[a]n intentional tort exclusion . . . is precluded under . . . [the MVSRL] up to the amount of the minimum insurance coverage required therein" but enforceable "as to any amount above the statutory minimum"); *Ward v. Baker*, 188 W. Va. 569, 573, 425 S.E.2d 245, 249 (1992) (noting that the insurer had "paid into court the mandatory minimum $20,000 bodily injury coverage" and that, "due to the existence of the valid named driver exclusion, [the insurer] [wa]s not responsible for any damages in excess of the $20,000"); Syllabus Point 2 of *Dairyland Ins. Co. v. East*, 188 W. Va. 581, 425 S.E.2d 257 (1992) (holding that "[a] named insured exclusion endorsement is invalid with respect to the minimum coverage amounts required by the . . . [MVSRL]" but that "[a]bove the minimum amounts of coverage required by West Virginia Code § 17D-4-12 (1992) . . . the endorsement remains valid"); and *Imgrund v. Yarborough*, 199 W. Va. 187, 193–94, 483 S.E.2d 533, 539–40 (1997) (holding "that an 'owned but not insured' exclusion to *uninsured* motorist coverage is valid and enforceable above the mandatory limits of *uninsured* motorist coverage required by W. Va.Code §§ 17D–4–2 (1979) (Repl.Vol.1996) and 33–6–31(b) (1988) (Supp.1991)" but that "[t]o the extent that an 'owned but not insured' exclusion attempts to preclude recovery of statutorily mandated minimum limits of *uninsured* motorist coverage, such exclusion is void and ineffective . . .").[3] The majority appears to go to great lengths to in an attempt to distinguish these precedents, many of

[3] We likewise endorsed this rule in *Burr v. Nationwide Mut. Ins. Co.*, 178 W. Va. 398, 405 n.10, 359 S.E.2d 626, 633 n.10 (1987) (noting our holding "in *Jones* that a driver exclusion in an automobile policy is inoperative up to the limits of liability insurance required under W.Va. Code, 17D–4–12" and stating that the "dealer plates" endorsement in question would "also be invalid under the analysis used in *Jones*.").

which were correctly cited by the United States District Court in its decision that is the subject of the current appeal before the Fourth Circuit Court of Appeals. However, we have yet to overrule *any* of these cases, and I believe they reflect a clear pattern that the Fourth Circuit described more than thirty years ago: "When West Virginia has found that an attempt to exclude or restrict coverage violated state law, it has voided the restriction or exclusion *only up to the level of minimum coverage*. It has permitted it to operate above this minimum." *Nationwide Mut. Ins. Co. v. Cont'l Ins. Co.*, 943 F.2d 49, ----, 1991 WL 181130, at *3 (4th Cir. 1991) (per curiam) (unpublished) (emphasis added). In my view, this is an entirely correct statement of our law, and I see no reason to depart from it in this case. Accordingly, I would hold that United Financial is only obligated to provide Mr. Perry the minimum amount of liability coverage required by the MVSRL (i.e., $25,000), and I would hold that the Exclusion is enforceable above that amount.

The majority opinion, however, adopts a different rule that finds the Exclusion void and ineffective to limit United Financial's obligation to provide Mr. Perry the "full limits" of liability coverage available under the Policy (i.e., $1 million). According to the majority opinion, West Virginia Code § 33-6-31(a) requires this result because it forbids any motor vehicle liability insurance policy to be issued unless it insures permissive users, like Mr. Perry, "against liability for death or bodily injury sustained or loss or damage occasioned *within the coverage of the policy . . . .*" *Id.* (emphasis added).

However, as United Financial points out, West Virginia Code § 33-6-31 also states that it does not "prevent any insurer from incorporating in such terms, conditions and

4

*exclusions* as may be consistent with the premium charged." *Id.* § 33-6-31(k) (emphasis added). That is not to say that subsection (k) grants insurers unfettered discretion to eliminate mandatory statutory coverages. It does not. As we held in Syllabus Point 3 of *Deel v. Sweeney*, "[i]nsurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, *so long as* any such exclusions do not conflict with the *spirit and intent* of the uninsured and underinsured motorists statutes." 181 W. Va. 460, 383 S.E.2d 92 (1989) (emphasis added).[4]

Accordingly, though I agree § 33-6-31*(a)* does not allow United Financial to entirely deny coverage to Mr. Perry as a permissive user, I believe that § 33-6-31*(k)* makes the Exclusion applicable beyond the statutory coverage limits set forth in Chapter 17D of the Code. I further believe that our previous holding in *Jones* supports this interpretation of the interplay between these statutory provisions. In *Jones*, we recognized an apparent "lack of harmony between this omnibus statute [i.e., § 33-6-31(a) and its express authorization to exclude specified persons] and the specific requirements of Chapter 17D of the *Code* concerning financial responsibility and minimum levels of insurance." *Jones*,

---

[4] The majority opinion holds, based on Syllabus Point 3 of *Gibson v. Northfield Ins. Co.*, 219 W. Va. 40, 631 S.E.2d 598 (2005), that any provision of a motor vehicle insurance policy that "tends to limit, reduce or nullify" the coverage required by § 33-6-31(a) is altogether "void and ineffective as against public policy." However, *Gibson*, itself, reveals that, in certain circumstances, § 33-6-31(a) yields to other pertinent statutory provisions. *See Gibson*, 219 W. Va. at 42, 631 S.E.2d at 600, syl. pt. 5 (holding that an insurance company may incorporate limiting terms and conditions that are inconsistent with the provisions of W. Va. Code § 33–6–31 into an insurance policy where such terms are permitted under W. Va. Code § 29–12A–16(a)).

177 W. Va. at 766, 356 S.E.2d at 637. To reconcile this seeming inconsistency, we adopted "a common sense reading of [the] statutes in their entirety" and reasonably "conclude[d] that the legislature intended in Chapter 17[D] to provide a minimum level of financial security to third-parties who might suffer bodily injury or property damage from negligent drivers"; beyond that amount, we concluded that "*Code* 33–6–31(a) [1982] allows an insurer and an insured to agree to a 'named driver exclusion' endorsement." *Id.*

The same common sense reasoning applies here. On the one hand, § 33-6-31(k) authorizes "any insurer" to incorporate "such terms, conditions and exclusions as may be consistent with the premium charged." Thus, § 33-6-31(k) would seem to support the Exclusion's complete denial of coverage to Mr. Perry on the facts of this case. On the other hand, § 33-6-31(a) clearly requires that liability policies must include coverage for permissive drivers, and § 17D-4-12(b)(2) (eff. 2015) requires each such policy to provide liability coverage to such permissive users "in the amounts required in" § 17D-4-2. In addition, § 17D-4-2(b) defines "proof of financial responsibility," for relevant purposes, as "proof of ability to respond in damages for liability . . . in the amount of $25,000 because of bodily injury to or death of one person in any one accident[.]" Thus, I believe that §§ 33-6-31(a), 17D-4-2(b), and 17D-4-12(b)(2), when read together, require United Financial to extend at least $25,000 of liability coverage to Mr. Perry in his capacity as a permissive user. However, reconciling these statutory provisions, and applying the previous decisions of this Court, I disagree with the majority's conclusion that United Financial is required to provide the full $1 million of liability coverage to Mr. Perry in this case. This is particularly

6

true under the unique facts of this case in which Mr. Perry, and not an employee of Milton Hardware, was driving the Milton Hardware's truck when it allegedly struck Mr. Ball, himself a Milton Hardware employee. Instead, I would follow *Jones* and hold that exclusions envisioned under § 33-6-31(k), but inconsistent with § 33-6-31(a)'s requirement that permissive drivers be covered, would have no force or effect up to the limits of financial responsibility required by § 17D-4-2(b); but above those limits, such exclusions would be enforceable. Because the majority opinion renders the Employee Indemnification and Employer's Liability exclusion entirely void and unenforceable in this case, even beyond the required coverage amounts set forth in W. Va. Code § 17D-4-2(b), I respectfully dissent.