UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 22-1129

_____

ERIE INSURANCE PROPERTY & CASUALTY COMPANY,

Plaintiff – Appellant,

v.

JAMES SKYLAR COOPER,

Defendant – Appellee.

------------------------------

WEST VIRGINIA INSURANCE FEDERATION,

Amicus Supporting Appellant.

_____

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Irene C. Berger, District Judge. (2:20−cv−00321)

_____

Argued: September 19, 2023          Decided: December 5, 2023

_____

Before HARRIS and QUATTLEBAUM, Circuit Judges, and KEENAN, Senior Circuit Judge.

_____

Question certified to the Supreme Court of Appeals of West Virginia by unpublished order. Senior Judge Keenan directed entry of the order with the concurrence of Judge Harris and Judge Quattlebaum.

_____

**ARGUED:** Matthew James Perry, BURNS WHITE LLC, Huntington, West Virginia, for Appellant. Jill Rice, DINSMORE & SHOHL LLP, Morgantown, West Virginia, for Amicus Curiae. R. Chad Duffield, FARMER, CLINE & CAMPBELL, PLLC, Charleston, West Virginia, for Appellee. **ON BRIEF:** J. Jarrod Jordan, Jill E. Lansden, LAMP BARTRAM LEVY TRAUTWEIN PERRY & POWELL, PLLC, Huntington, West Virginia, for Appellant. Jennifer D. Roush, FARMER, CLINE & CAMPBELL, PLLC, Charleston, West Virginia, for Appellee. David R. Stone, DINSMORE & SHOHL LLP, Morgantown, West Virginia, for Amicus Curiae.

———————————

2

## ORDER

BARBARA MILANO KEENAN, Senior Circuit Judge:

The United States Court of Appeals for the Fourth Circuit, exercising the privilege afforded by the State of West Virginia through the Uniform Certification of Questions of Law Act, West Virginia Code §§ 51-1A-1 through 51-1A-13, requests that the Supreme Court of Appeals of West Virginia exercise its discretion to answer the following question:

> Does West Virginia Code § 33-6-31 require an insurer, who issues a commercial automobile insurance policy to a named insured providing liability coverage for particular owned vehicles and a class of non-owned vehicles, to offer underinsured motorist coverage for the class of non-owned vehicles?

This Court acknowledges that the Supreme Court of Appeals may restate this question. *See* W. Va. Code §§ 51-1A-4, 51-1A-6(a)(3). In our view, there is no controlling appellate decision, constitutional provision, or statute of West Virginia that answers this question. *See id.* § 51-1A-3. Accordingly, we conclude that the question is appropriate for certification.

## I.

### A.

In this case involving an insurance coverage dispute, the facts are not contested. In August 2019, James Cooper was injured in a car accident while riding as a passenger in a car owned by Rick Huffman. When the accident occurred, Cooper and Huffman, both

3

employees of Pison Management, LLC (Pison), were driving to a jobsite during the course of their employment with Pison. Because Cooper's injuries and resulting damages exceeded the third-party driver's insurance limits, Cooper sought underinsured motorist (UIM) coverage under Pison's commercial automobile policy (the policy) issued by Erie Insurance Property & Casualty Company (Erie).

The policy provided $1 million in liability coverage for bodily injury and property damage for two particular vehicles owned by Pison (owned vehicles), as well as a class of "non-owned" vehicles associated with 1-to-25 employees.[1] The policy also provided $1 million in UIM coverage for the owned vehicles. Erie did not provide Pison with an option to purchase UIM coverage for the class of non-owned vehicles.[2]

---

[1] The policy also provided liability coverage for a class of "hired auto[s]," "if any."

[2] In order to render the certified question dispositive of the appeal before us, we resolve in advance the question of coverage under *the policy*. *See* W. Va. Code § 51-1A-3. We agree with the district court that the policy did not include UIM coverage for Cooper while riding in Huffman's car. The "uninsured/underinsured" (UM/UIM) endorsement in the policy stated that "[w]e will pay damages" that "involve . . . bodily injury to 'you or others we protect.'" "You" was defined as the named insured, which under the policy was Pison. "Others we protect" included in relevant part: "anyone . . . while occupying any *owned auto* we insure" and "if you are an *individual*, anyone else while occupying *a non-owned auto we insure*." Because Pison was not an "individual" under the policy terms, we agree with the district court's holding that the plain language of the UM/UIM endorsement established that the policy did not provide UIM coverage to Cooper while riding in Huffman's car. Our conclusion is not altered by Cooper's argument seeking an alternative basis for affirming the district court's judgment, namely, that the policy was ambiguous regarding whether UIM coverage applied. Cooper contends that the declarations page states that the UM/UIM endorsement applied to "all autos," including non-owned vehicles. But the declarations page plainly showed that no premium was paid for UIM coverage for non-owned vehicles, which payment was required for UIM coverage to apply. We therefore conclude that the policy unambiguously did not extend UIM coverage to Cooper while riding in Huffman's car.

4

The policy described "non-owned" vehicles as "Employer's Non-Ownership Liability," and included vehicles owned by Pison's employees while being used in Pison's business. The parties agree that Huffman's car qualified under the policy as falling within the class of non-owned vehicles.

Based on the policy's terms, Erie denied Cooper's claim for UIM coverage and filed suit in federal district court seeking a declaration that the policy did not provide the UIM coverage sought by Cooper. Cooper filed an answer and counterclaims seeking, in relevant part, a declaratory judgment that Erie violated West Virginia Code § 33-6-31. According to Cooper, that statute required Erie to provide Pison with the opportunity to elect UIM coverage for the class of non-owned vehicles. Cooper asserted that because Erie failed to make such an offer, UIM coverage existed by operation of law to cover Cooper as a passenger in Huffman's car.[3] W. Va. Code § 33-6-31(b); *see also Thomas v. McDermitt*, 751 S.E.2d 264, 265 (W. Va. 2013) (explaining that when an insurer is "required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured").

The parties filed cross-motions for summary judgment, and the district court awarded judgment in favor of Cooper. The court held that the statute requires that an insurer make a commercially reasonable offer of UIM coverage "to *all* vehicles covered by [a liability] policy," including the class of non-owned vehicles. Accordingly, the court

---

[3] *See supra* note 2 (addressing Cooper's alternative argument that the policy language was ambiguous regarding whether UIM coverage extended to non-owned autos).

5

issued a declaratory judgment that Cooper was entitled to receive UIM coverage equivalent to the liability coverage limit, $1 million. Erie filed a timely appeal in this Court.[4]

## B.

Before addressing the parties' arguments, we set forth the relevant statutory provisions. Subsection (a) of West Virginia Code § 33-6-31 addresses required liability coverage and states, in relevant part, that automobile insurance policies "covering liability arising from the . . . use of any motor vehicle . . . issued . . . in this state to the owner" of the motor vehicle, or issued "upon any motor vehicle" titled in West Virginia, must "contain[] a provision insuring the named insured and any other person . . . using the motor vehicle with the consent . . . of the named insured."[5] W. Va. Code § 33-6-31(a).

Regarding UIM coverage, subsection (b) of Section 33-6-31 states that any insurer offering a liability policy as defined in subsection (a):

> shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he or she is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than [the liability coverage provided in the policy.]

---

[4] The district court entered final judgment after the parties entered into an agreement resolving their remaining claims.

[5] Subsection (a) also states that "if coverage resulting from the use of a nonowned automobile is conditioned upon the consent of the owner of such motor vehicle, the word 'owner' shall be construed to include the custodian of such nonowned motor vehicles." W. Va. Code § 33-6-31(a).

6

*Id.* § 33-6-31(b). In other words, when an insurer issues a liability policy as defined in subsection (a), subsection (b) requires that an insurer make an offer of UIM coverage "to the insured" at least equivalent to the amount of liability coverage. *Id.*

Subsection (c) of the same statute defines "insured," as used in the statute, as:

the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person . . . who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies.

*Id.* § 33-6-31(c). The West Virginia Supreme Court of Appeals has explained that this definition of "insured" provides for two classes of insureds: (1) the named insured and her spouse and resident relatives, who enjoy broad UIM protection because their coverage is not limited to the use of a particular vehicle, and (2) any person authorized by the named insured to use "the motor vehicle to which the policy applies" (Class II insured). *See Progressive Max Ins. Co. v. Brehm*, 873 S.E.2d 859, 864 (W. Va. 2022) (citing *Starr v. State Farm Fire & Cas. Co.*, 423 S.E.2d 922, 927 (W. Va. 1992)).

Finally, a separate statute, West Virginia Code § 33-6-31d sets forth the manner in which an offer of UIM coverage must be made. Section 33-6-31d states that the insurer must use a "form" prepared by the West Virginia Insurance Commissioner that "shall specifically inform the named insured of the coverage offered and the rate calculation for the coverage, including, but not limited to, levels and amounts of the coverage available and the number of vehicles which will be subject to the coverage." W. Va. Code § 33-6-31d(a). With these provisions in mind, we turn to the parties' arguments.

C.

7

Erie argues that the plain meaning of Section 33-6-31 establishes that a class of non-owned vehicles to which liability coverage applies does not fall within the scope of the statute's requirement to offer UIM coverage. According to Erie, Section 33-6-31(a) applies only to policies issued to the "owner" of a vehicle, which limits application of subsection (b) of that statute to owned vehicles.[6] Erie further submits that Section 33-6-31(b) requires that an insurer offer UIM coverage "to the *insured*," which, despite subsection (c)'s broader definition of an "insured," necessarily means the policy purchaser or "named insured." Erie contends that Cooper does not qualify as a Class II insured under subsection (c) because Pison did not provide Cooper permission to use "'*the*' motor vehicle to which the policy applies," namely, either of the two owned vehicles. *See Stone v. Liberty Mut. Ins. Co.*, 478 S.E.2d 883, 886 (Va. 1996) (emphasis added) (interpreting a similar UIM coverage statute under Virginia law and holding that a permissive user was not using "the" owned vehicles to which the policy applied, and that a named insured "generally cannot give permission to use a vehicle that the named insured does not own").

Erie contends that its interpretation of Section 33-6-31 is supported by decisions issued by the Supreme Court of Appeals of West Virginia. The Court has explained that "[o]ptional UIM coverage is intended to 'enable *the insured* to protect himself'" against losses arising from underinsured third parties. *See Brehm*, 873 S.E.2d at 865 (quoting *Deel*

---

[6] Erie further contends that the reference in subsection (a) to "the use of a nonowned automobile," merely ensures that a custodian of the vehicle, even though she is not the owner, can provide permission to another to use the owner's vehicle. *See Metro. Prop. & Liab. Ins. Co. v. Acord*, 465 S.E.2d 901, 907-08 (W. Va. 1995).

8

*v. Sweeney*, 383 S.E.2d 92, 95 (W. Va. 1989)); *see also Alexander v. State Auto Mut. Ins. Co.*, 415 S.E.2d 618, 625 (W. Va. 1992) (explaining that UIM coverage "is intended to benefit the person who bought the policy").[7]

Finally, Erie points out that Section 33-6-31d requires that an insurer offering optional UIM coverage identify the "number" of vehicles and corresponding premium. Because the policy does not identify the number of non-owned vehicles, Erie contends that it would be unable to make a commercially reasonable offer of UIM coverage. Thus, Erie submits that Section 33-6-31d contemplates that offers of UIM coverage required by Section 33-6-31 are limited to owned vehicles under the policy.

Cooper maintains, however, that Erie's policy argument regarding the "number" of vehicles circumvents the statute's plain language, which, in Cooper's view, requires that UIM coverage be offered for non-owned vehicles when liability coverage applies to those vehicles. Cooper also maintains that he is a Class II insured under Section 33-6-31(c), as a permissive user of "the motor vehicle to which the policy applies." Because the policy "applies" liability coverage to a class of non-owned vehicles, including Huffman's vehicle,

---

[7] Erie also argues that excluding non-owned vehicles from an offer of UIM coverage to a named insured is permitted under W. Va. Code § 33-6-31(k). Thus, Erie submits that if UIM coverage for non-owned vehicles can be excluded, then Section 33-6-31(b) cannot require an insurer to offer such coverage. In response, Cooper contends that subsection (k) does not address an insurer's initial obligation to offer UIM coverage.

In addition, the West Virginia Insurance Federation filed an amicus curiae brief in this Court supporting Erie's position. The Federation submits that because Section 33-6-31 requires that an insurer offer UIM coverage to a named insured for a vehicle the insured owns, requiring an offer of UIM coverage to a named insured for a class of non-owned vehicles would duplicate the process of offering coverage to the owners of the vehicles in that class.

9

Cooper contends UIM coverage should extend not only to the named insured, but also to any permissive user of any vehicle insured under the policy.

We have not found any West Virginia authority that definitively answers the question presented. Contrary to Erie's contention, we conclude that the state court's recent decision in *Brehm*, which issued after the district court entered judgment in the present case, is not controlling due to the distinct factual circumstances present in that case. 873 S.E.2d 859.

In *Brehm*, the Court addressed in relevant part whether guest passengers in a rental vehicle qualified as Class II insureds under Section 33-6-31(c). *Id.* The passengers sought UIM coverage under the personal liability policy issued to the driver of the rental vehicle. *Id.* at 861-63. The driver's policy did not extend liability coverage to the rental vehicle, but such coverage was extended by operation of law under a separate statute. *Id.* at 865. On these facts, the Court held in relevant part that the guest passengers in the rental vehicle did not qualify under Section 33-6-31(c) for Class II coverage as permissive users of "the motor vehicle to which the policy applies." *Id.* at 866.

In contrast here, we must consider whether an employee who was a passenger in a non-owned vehicle that was included in the liability coverage under the plain language of the policy qualifies as a Class II insured under the statute. Thus, although portions of the analysis in *Brehm* may aid in the state court's decision here, we conclude that the factual distinctions between this case and *Brehm* require additional analysis beyond the holding in *Brehm*. We therefore determine that certification to the Supreme Court of Appeals of West Virginia is warranted to decide whether West Virginia Code § 33-6-31 requires that an

10

insurer, who issues a commercial automobile insurance policy to the named insured providing liability coverage for particular owned vehicles and a class of non-owned vehicles, offer underinsured motorist coverage for the class of non-owned vehicles.

## II.

Under the privilege made available by the West Virginia Uniform Certification of Questions of Law Act, it is hereby ORDERED: (1) That the question stated above be, and the same hereby is, certified to the Supreme Court of Appeals of West Virginia; (2) that the Clerk of this Court forward to the Supreme Court of Appeals of West Virginia, under the official seal of this Court, a copy of this order and, to the extent requested by the Supreme Court of Appeals of West Virginia, the original or a copy of the record in this Court; and (3) that any request for all or part of the record be fulfilled by the Clerk of this Court simply upon notification from the Clerk of the Supreme Court of Appeals.

The names and addresses of counsel of record for the parties are:

*Counsel for Erie Insurance Property & Casualty Company*
Matthew J. Perry
Jill E. Landsen
Burns White, LLC
720 4th Avenue
Huntington, WV 25701

*Counsel for James Skylar Cooper*
R. Chad Duffield
Jennifer D. Roush
Farmer, Cline & Campbell, PLLC
P.O. Box 3842
Charleston, WV 25338

11

This Order is entered by Senior Circuit Judge Keenan, with the concurrence of Judge Harris and Judge Quattlebaum.

*QUESTION CERTIFIED*

FOR THE COURT:

*Barbara M. Keenan*
_____
Barbara Milano Keenan
United States Circuit Judge

A True Copy, Teste
Nwamaka Anowi, Clerk
BY _____
Deputy Clerk

12